UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| TINA MULLINAX et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 3:18-CV-02-JRG-DCP |
| | ) | |
| SEVIER COUNTY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is Defendant's Motion [Doc. 97], which requests that the Court issue an order precluding Plaintiffs from advancing proof on certain damages. Plaintiffs have responded in opposition to the Motion [Doc. 98], and Defendants have replied [Doc. 99]. The motion is now ripe for adjudication.

**I.  BACKGROUND**

The Court will first begin with the allegations in the Complaint and then turn to the relevant procedural history.

**A.  Complaint**

This case has been litigated for almost three years. The Complaint was filed on January 2, 2018, [Doc. 1], alleging that Defendants violated the Fourth Amendment's right to be free from unreasonable searches and the use of excessive force in violation of 42 U.S.C. § 1983 and negligence.

1

Specifically, Plaintiffs allege that on December 31, 2016, Defendant Sevier County Ambulance Service was dispatched to a camper-trailer located at Sharp Road to assist a morbidly obese woman who had fallen. [Doc. 1 at ¶¶ 17-18]. Upon arriving, Defendants Michael O'Connor and Blake Gregg, employees with Defendant Sevier County Ambulance Service, contacted law enforcement, and Defendant Justin Johnson with the Sevier County Sherriff's Office arrived at the scene. [*Id.* at ¶¶ 21, 23].

Plaintiffs lived in a single-wide trailer immediately in front of the camper-trailer that housed the morbidly obese woman. [*Id.* at ¶ 24]. The Complaint alleges that while Defendant Johnson was talking with the morbidly obese woman, he saw Plaintiff Tina Mullinax leaving her trailer. [*Id.* at ¶¶ 39-40]. Defendant Johnson yelled, "Don't do that." [*Id.* at ¶ 45]. Defendant Johnson then approached Plaintiff Tina Mullinax from the road with his loaded weapon pointed at her. [*Id.* at ¶¶ 56, 64]. Upon seeing Defendant Johnson, Plaintiff Tina Mullinax ran away, and Defendant Johnson chased after her. [*Id.* at ¶¶ 65-66]. Defendant Johnson caught up to Plaintiff Tina Mullinax and threw her to the ground. [*Id.* at ¶¶ 67-68].

The Complaint alleges that Defendants O'Connor and Gregg began assisting Defendant Johnson in holding Plaintiff Tina Mullinax down. [*Id.* at ¶ 71]. Defendant Gregg handcuffed Plaintiff Tina Mullinax. [*Id.* at ¶ 75]. While Defendants O'Connor and Gregg were restraining Plaintiff Tina Mullinax, Defendant Johnson kicked her in the face, causing injury and potentially causing her retina to detach. [*Id.* at ¶ 80]. Plaintiffs Brian Mullinax and Robin Sutton witnessed the officers' assault on Plaintiff Tina Mullinax. [*Id.* at ¶¶ 84, 85].

Plaintiff Brian Mullinax yelled that he was recording the incident. [*Id.* at ¶ 88]. Defendant Johnson aimed his weapon and fired seven (7) shots at Plaintiffs Brian Mullinax and Robin Sutton as they stood on their front porch of their home. [*Id.* at ¶ 90]. Defendant Johnson then ran away

2

from the scene, radioed dispatch that shots had been fired, and then returned to the scene. [*Id.* at ¶ 95, 97-98]. Defendant O'Connor ordered Plaintiff Brian Mullinax to lay on the ground, and Plaintiff Brian Mullinax complied. [*Id.* at ¶¶ 104-05]. Defendant Johnson began making strange noises, shaking, and crying, so Defendant O'Connor forcibly wrestled Defendant Johnson's service weapon away from him. [*Id.* at ¶¶ 106-10]. Defendant O'Connor then pointed the loaded weapon at Plaintiff Brian Mullinax. [*Id.* at ¶ 111]. Eventually, Defendant Johnson grabbed his service weapon back from Defendant O'Connor. [*Id.* at ¶ 113]. Defendant Todd Spence and another employee with Defendant Sevier County Ambulance Service handcuffed Plaintiff Brian Mullinax while he laid on the ground face down. [*Id.* at ¶ 115]. Defendant O'Connor asked Defendant Johnson how to turn off Defendant Johnson's body camera, and in that moment, Defendant Johnson's body camera turned off. [*Id.* at ¶¶ 116-17]. The Complaint alleges that several Defendants entered Plaintiffs' trailer after the shooting without a warrant and without Plaintiffs' consent. [*Id.* at ¶¶ 118, 120-21, 122-23].

Further, the Complaint alleges that Defendant Johnny Bohanan charged Plaintiffs Tina Mullinax and Brian Mullinax with a Class C Felony of aggravated assault and that due to their inability to make bond, they were jailed for over forty (40) days. [*Id.* at ¶¶ 134, 136]. While Plaintiffs Tina Mullinax and Brian Mullinax were in jail, Defendant Bart Tyner went to Plaintiffs' trailer to gather the cell phones inside. [*Id.* at ¶ 137, 139]. When Plaintiff Brian Mullinax returned home, he discovered that the video he took of the incident on his smartphone was no longer saved. [*Id.* at ¶ 143].

The Complaint alleges violations of 42 U.S.C. § 1983 and the Fourth Amendment to the United States Constitution and negligence. In the prayer for relief, Plaintiffs state as follows:

> Plaintiffs demand punitive damages in the amount of $350,000.00 against all Defendants for each of their roles in violating Plaintiff's

3

civil rights, further Plaintiffs demand compensatory damages in the amount of $400,000 for the physical injury received and emotional trauma and distress each Plaintiff suffered in various ways, including but not limited to being fired upon, being kicked in the head while under custody, being forced to spend over a month in jail, all in an amount to be determined before trial, and such other damages as to which the Plaintiffs are entitled. Plaintiffs further request that this Court award costs, fees, expenses, and reasonable attorney's fees as authorized by 42 U.S.C. § 1988; and any other relief that this Court deems proper and just.

### B. Procedural History

The parties filed several motions in limine, one of which is relevant to the instant matter. Specifically, in Defendants' fifth motion in limine [Doc. 67], they argued that all damages that are unsupported by a method of calculation be excluded. Later, in the motion, Defendants requested that Plaintiffs be barred from presenting any proof on damages. For grounds, Defendants argued that (1) Plaintiffs did not disclose any method by which they calculated damages, (2) Plaintiffs did not disclose themselves to be experts or present expert proof under Rule 702, (3) lay testimony under Rule 701 requires more than a mere lay opinion without support, and (4) Plaintiffs had not disclosed any witness other than themselves to testify about the damages and calculations thereof.[1]

In response to Defendants' fifth motion in limine [Doc. 85], Plaintiffs stated that they had more than adequately explained the basis for their damages. Plaintiffs provided a list of damages and explained as follows:

1. Emotional pain and suffering, and fear of Brian Mullinax - $30,000. Damages will be established through presentation of testimony of victims and witnesses.

2. Physical and emotional pain and suffering and fear of Tina Mullinax - $40,000. Damages will be established through presentation of records and testimony of victims and witnesses.

---

[1] Defendants also requested that the Court exclude a recording based on hearsay, but as the Court noted in the previous Order [Doc. 96], the sentence appears to be a typographical error.

4

3. Loss of liberty of Brian Mullinax resulting from illegal arrest, prosecution, and incarceration for forty-two days at a rate of approximately $3,571.43 per day for a total of $150,000. Damages will be established through presentation of testimony of victims and witnesses.

4. Loss of liberty of Tina Mullinax resulting from illegal arrest, prosecution, and incarceration for forty-two days at a rate of approximately $3,571.43 per day for a total of $150,000. Damages will be established through presentation of testimony of victims and witnesses.

5. Emotional pain and suffering and fear of Robin Sutton - $24,000. Damages will be established through presentation of testimony of victims and witnesses.

6. Property damage of Robin Sutton - $5,000 for damage to trailer caused by seven through and through bullet holes going through two walls. Damages will be established through presentation of testimony of victims and witnesses.

7. Invasion of privacy of Robin Sutton - $1,000. Damages will be established through presentation of testimony of victims and witnesses.

8. Punitive damages of $350,000. Damages will be established through presentation of testimony of victims and witnesses.

9. Costs of trial and defense.

10. Attorney fees.

[Doc. 85]. Defendants did not reply to Plaintiff's response.

The above filings were confusing at best. It was not clear to the Court whether Defendants requested that the Court exclude proof of all damages or just damages that Plaintiffs had not provided a calculation in support thereof. Further, it was not clear to the Court when Plaintiffs provided the above list to Defendants.

In any event, on May 14, 2020, the Court entered an Order and Memorandum [Doc. 96], addressing the parties' motions in limine, including Defendants' fifth motion in limine.

5

Specifically, with respect to Defendants' fifth motion in limine, the Court noted that a computation of general damages of pain and suffering or emotional distress and punitive damages is not required by Rule 26 because such damages are subjective and do not lend themselves to computation. [Doc. 96 at 7]. With respect to the other damages, the Court noted that it simply did not have sufficient information as to whether such damages should be excluded. The Court further explained that Defendants' method of bringing this issue to the undersigned's attention, by filing a motion in limine, is not the purpose of a motion of limine. [*Id.* at 8]. The undersigned, therefore, ordered the parties to meet and confer regarding Plaintiffs' calculation of damages for the remaining categories of information to determine whether they could resolve the matter. [*Id.* at 9]. The Court also granted leave for Defendants to file an appropriate motion if the issue could not be resolved.

The instant Motion followed.

## II. POSITIONS OF THE PARTIES

Defendants state that they attempted to comply with the Court's previous Memorandum and Order, but Plaintiffs' counsel did not respond, and therefore, Defendants proceeded with the instant Motion. Defendants argue that Plaintiffs bear the burden of proving damages and that without adequate proof, there can be no award of damages in any amount. Defendants state that Plaintiffs Brian Mullinax and Tina Mullinax intended to claim damages for loss of liberty resulting from their illegal arrest, prosecution, and incarceration and for forty-two (42) days at a rate of approximately $3,571.43 per day for a total of $150,000. Defendants state that Plaintiffs Brian Mullinax and Tina Mullinax intend to establish such damages through presentation of testimony of victims and witnesses at trial. Defendants argue, however, that at no time during the pendency of this matter have Plaintiffs Brian Mullinax or Tina Mullinax established any proof to show that

6

the fact of their arrest, prosecution, or incarceration resulted in damages. Defendants state that Plaintiffs Brian Mullinax or Tina Mullinax did not establish such proof in their initial disclosures, the responses to interrogatories, or their requests for production of documents. Further, Defendants argue that Plaintiffs Brian or Tina Mullinax did not supplement their discovery responses as required.

With respect to the claims of $150,000 each for Plaintiffs Brian Mullinax and Tina Mullinax as special damages for loss of liberty, Defendants argue that these Plaintiffs were unemployed at the time they were arrested and that they have not produced any proof that their loss of liberty resulted in special damages, such as a pecuniary loss. Defendants argue that Plaintiffs have not pled pecuniary loss as a special damage. Defendants request that the Court preclude Plaintiffs from advancing proof before the jury on the above types of damages.

Plaintiffs respond [Doc. 98] that the only action taken by defense counsel was to send an email to Plaintiffs' counsel asking for proof of damages. Plaintiffs acknowledge that they did not respond to the email, stating that they "have already made clear that proof of damages will consist of testimony of Plaintiffs." Plaintiffs state that Defendants had the opportunity to depose Plaintiffs but chose not to do so. Plaintiffs argue that short of trial, they have provided as much detail about their calculation of damages that is possible under the circumstances. Plaintiffs argue that damages resulting from loss of liberty are extremely difficult, if not impossible, to measure. Plaintiffs insist that they are entitled to compensatory damages under the doctrine of presumed damages.

Defendants filed a Reply [Doc. 99], arguing that they followed the Court's previous instruction and that Plaintiffs did not. Defendants request that Plaintiffs' Response be stricken because they chose to ignore the Court's Order and that Plaintiffs be sanctioned. Defendant state that Plaintiffs' reliance on the doctrine of presumed damages should be precluded because they

7

have never pled this type of recovery or disclosed it until now. Defendants state that Plaintiffs' statement that their damages are hard to calculate is insufficient. Defendants submit that to date, Plaintiffs have not shown damages for loss of liberty and that when assessing such damages, courts have typically looked at whether a harm occurred by being incarcerated. Defendants argue that Plaintiffs have never established that being in jail actually harmed them and that Plaintiffs have never established proof that their detention was unlawful. Defendants maintain that Plaintiffs should be precluded at trial from submitting damages for loss of liberty.

## III. ANALYSIS

As an initial matter, and as explained above, the Court notes that in the Memorandum and Order [Doc. 96], it directed the parties to meet and confer regarding Plaintiffs' calculation of damages for the remaining categories of damages. Each party claims that the other party did not comply with the Court's directive. Plaintiffs state that defense counsel sent only a single email on May 27, 2020, at 1:31 p.m., asking whether Plaintiffs had proof of damages so that defense counsel may review. Plaintiffs state that Defendants' Motion was filed the next day.

Generally, the Court would agree that sending a single email and filing a motion the next day does not constitute a meaningful meet and confer. Plaintiffs, however, do not take the position that they did not receive the email or they did not have time to review and respond to the email. Instead, Plaintiffs acknowledge that they did not respond to Defendants' email "because Plaintiffs have already made clear that proof of damages will consist of the testimony of Plaintiffs." [Doc. 98]. Plaintiffs' counsel's actions are wholly contrary to the undersigned's direction in the Court's Memorandum and Order.

8

While the Court will not strike Plaintiffs' Response, as Defendants have requested, the Court hereby **ADMONISHES** Plaintiffs that the failure to follow future orders of the Court may result in sanctions, including being held in contempt of Court.

Turning to the merits of Defendants' Motion, Defendants request that the Court preclude Plaintiffs from presenting proof with respect to Plaintiffs Brian and Tina Mullinax's loss of liberty claim. First, Defendants argue that at no time during the pendency of this matter have Plaintiffs established any proof to show that the fact of their arrest, prosecution, and incarceration resulted in damages. Second, Defendants state that Plaintiffs have not produced any proof that their loss of liberty resulted in special damages and that they have never pled such a claim. Plaintiffs state that they are entitled to compensatory damages based on the presumed damages doctrine.

"The damages provision of 42 U.S.C. § 1983 provides 'a species of tort liability in favor of persons who are deprived of rights, privileges, or immunities secured to them by the Constitution.'" *Rhodes v. Lauderdale Cty., Tenn.*, No. 2:10-CV-02068-JPM, 2012 WL 4434722, at *11 (W.D. Tenn. Sept. 24, 2012) (quoting *Memphis Cmty. Sch. Dist. v. Stachura,* 477 U.S. 299, 305–06 (1986)). For instance, "a plaintiff in a § 1983 suit "is entitled to compensation for loss of time, for physical discomfort or inconvenience, and for any resulting physical illness or injury to health." *Id.* (quoting *Jaegly v. Couch,* 439 F.3d 149, 154 (2d Cir.2006) (other quotations omitted)). Courts have explained the damages in illegal detention cases as follows:

> (1) damages for the loss of liberty, which "redress the denial of free movement and the violation done to [an individual's] dignity as a result of the unlawful detention, and not the physical and mental injuries arising from the incident," and (2) damages for tangible injury, including "physical harm, embarrassment, and emotional suffering."

*Id.* (quoting *Martinez v. Port Auth. of N.Y.,* 2005 WL 2143333 at *19 (S.D.N.Y Sept. 2, 2005)). For instance, in *Rhodes*, the court awarded each plaintiff $72,000 upon hearing evidence that they

9

"were taken from their home without explanation, incarcerated for nearly thirty-six hours in conditions that were objectively uncomfortable, given little explanation for the cause of their detention, and given no indication of when they would be freed." *Id.; see also Turnage v. Oldham*, 346 F. Supp. 3d 1141, 1157 (W.D. Tenn. 2018) (explaining that unlawful imprisonment is not a purely economic injury because it implicates dignitary injuries that are inherently nonpecuniary).

The court finds the Second Circuit's opinion in *Kerman v. City of New York*, 374 F.3d 93 (2d Cir. 2004) helpful. In *Kerman*, plaintiff, who had a history of depression and borderline personality disorder, telephoned his girlfriend, and told her that he might purchase a gun to commit suicide and that he might kill his treating psychiatrist. *Id.* at 97. The plaintiff's girlfriend called the police. *Id.* at 98. A team of officers arrived at plaintiff's apartment. *Id.* The plaintiff opened the door, and the officers burst through, hitting the plaintiff's head on the door and knocking over a bag of used kitty litter. *Id*. The plaintiff was wearing only a towel, having just gotten out of the shower, but the towel came off when he fell, and he became covered in the kitty litter which had spilled on the floor. *Id*. The officers cuffed plaintiff but did not find a gun at the house. *Id*. Thirty minutes later, paramedics arrived, who placed the plaintiff, still handcuffed and naked, in a restraint blanket and took him to a hospital for overnight observation. *Id*. The plaintiff was released the following day. *Id*.

The plaintiff filed suit against the city and the police officers under 42 U.S.C. § 1983, arguing that his Fourth Amendment rights had been violated by the warrantless entry into his apartment, by his initial seizure, his subsequent involuntary detention and hospitalization, in addition to state law claims for battery, false imprisonment, and intentional infliction of emotional distress. *Id*. at 98.

10

With respect to the plaintiff's loss of liberty claim, the Second Circuit explained, "[W]here the jury has found a constitutional violation and there is no genuine dispute that the violation resulted in some injury to the plaintiff, the plaintiff is entitled to an award of compensatory damages as a matter of law." *Id*. at 124. Specifically, the Court noted that "where the plaintiff was indisputably deprived of his liberty, and the conduct of the defendant responsible for the deprivation was found to be unlawful, we have held that the plaintiff is entitled to compensatory, not merely nominal, damages." *Id*. The Court reasoned that in another case, it had noted, 'New York cases uphold awards of up to $10,000 for eve[e]n short periods of confinement without proof of actual damages." *Id*. (citations omitted).

The *Kerman* Court went on to explain that "the compensatory damages that may be awarded for false imprisonment fall into two categories: general damages and special damages." *Id*. at 125. "General damage is a 'harm of a sort inseparable from the unlawful restraint.' For 'false imprisonment, upon pleading and proving merely the unlawful interference with his liberty, the plaintiff is entitled to 'general' damages for loss of time and humiliation or mental suffering." *Id*. (citations omitted). The Court went on to hold that "general damage need not be specifically proved – it may be inferred from the circumstances of the arrest or imprisonment and would include at least the value of the time lost by the plaintiff during the period of detention." *Id*. (citations omitted)

In contrast, the Court explained that "items of special damage commonly include physical discomfort, shock, or injury to health, loss of employment, and injury to the plaintiff's reputation or credit." *Id*. (citations omitted). Special damages "must be specifically pleaded and proven." *Id*. (citations omitted).

The Court, addressing in further detail damages related to lost time, and taking guidance from jurisprudence regarding the concept of presumed damages, held that "a loss of time, in the

11

sense of loss of freedom, is inherent in any unlawful detention and is compensable as 'general damages' for unlawful imprisonment **without the need for pleading or proof**." *Id.* at 130. (citation omitted) (emphasis added). "Loss of time, an injury distinct from mental suffering or humiliation, may, but need not, have economic consequences; if recovery for an economic loss is sought, the common law treats that as an item of special damage that **must be pleaded and proven**." *Id*. (citation omitted) (emphasis added). "General damage for false imprisonment would include at least the value of the time lost by the plaintiff during the detention and any mental suffering or humiliation sustained in consequence of the arrest or restraint. Items of special damage include the interruption of business, or the loss of a particular business opportunity or employment." *Id*. at 130-31.

While *Kerman* is a Second Circuit case, and thus not binding authority, the Sixth Circuit has looked on the *Kerman* case to help explain the concept of presumed damages and what types of damages were compensable for constitutional violations. *See King v. Zamiara*, 788 F.3d 207, 214-215 (6th Cir. 2015). As with the *King* Court, this Court finds the *Kerman* decision both persuasive and instructive, and adopts *Kerman's* reasoning herein.

Turning to the instant case, to the extent that Plaintiffs seek "general damages," as set forth above, they were not required to plead or prove them with specific numerical calculations. *Kerman*, 374 F.3d at 130. Thus, the Court rules that Plaintiffs may seek "general damages" and may present testimony relevant to that issue. There has been no proffer made as to what Plaintiffs' testimony on the issue of "general damages" may be, so the admissibility and scope of such testimony is clearly left to the discretion of the District Judge to address during the trial.

To the extent that Plaintiffs may seek some form of "special damages," as set forth above, such damages are required to be "pleaded and proven." *Id*. Plaintiffs have not pled any "special

12

damages," their initial disclosures did not include calculations for how such "special damages" might be calculated, and, in arguing the instant motion, have asserted only that their damages arising from their alleged loss of liberty are the sort of damages covered by the concept of presumed damages. Thus, it does not appear that Plaintiffs currently seek "special damages." However, in light of Plaintiffs' failure to specifically plead or make any disclosures related to "special damages," the Court finds that they should be barred from doing so if they do seek to change their position at trial. *See* Fed. R. Civ. P. 37(c)(1).

## IV.     CONCLUSION

For the reasons, and to the extent set forth more fully above, Defendants' Motion **[Doc. 97]** is hereby **GRANTED in part** and **DENIED in part**. Plaintiffs may seek and present evidence as to any general damages they incurred in relation to their claim for loss of liberty. Because of Plaintiffs' failure to plead or disclose any information as to special damages related to their claim of loss of liberty, to the extent that Plaintiffs may seek to pursue such a theory at trial, they are barred from doing so.

**IT IS SO ORDERED.**

ENTER:

_Debra C. Poplin_
Debra C. Poplin
United States Magistrate Judge